## TEEHAN v. UNITED STATES.

District Court, D. Massachusetts.   April 11, 1928.

No. 2787.

1. **Corporations ⬅99(1)—Stock issued for notes of shareholder held not legally issued (St. Mass. 1903, c. 437, § 14).**

Under St. Mass. 1903, c. 437, § 14, providing that no stock shall be issued, unless the cash, so far as due, or the property, services, or expenses for which it was authorized to be issued, has been actually received by corporation, stock issued for notes of shareholder is not legally issued.

2. **Corporations ⬅152—Declaration of dividend, for sole purpose of paying for illegally issued shares, was illegal and void (St. Mass. 1903, c. 437, § 14).**

Where stock was illegally issued for notes of shareholder under St. Mass. 1903, c. 437, § 14,

director's declaration of dividend in cash for sole purpose of paying for shares illegally issued was likewise illegal and void.

3. **Internal revenue ⬅7(7)—Declaration of dividend applicable solely to payment of additional stock illegally issued, if valid, constituted "stock dividend," not taxable as income (St. Mass. 1903, c. 437, § 14).**

Where stock was illegally issued under St. Mass. 1903, c. 437, § 14, and thereafter directors of corporation voted to declare dividend for sole purpose of paying for such shares, held, that, even if transaction could be upheld by disregarding irregularities of form and going to substance, the dividend would be a "stock dividend," rather than a cash dividend, and would therefore not be taxable as income.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Stock Dividend.]

At Law.   Action by John F. Teehan against the United States.   Judgment for plaintiff.

Hurlburt, Jones & Hall, and Herbert U. Smith, all of Boston, Mass., for plaintiff.

J. M. Leinenkugel, Sp. Asst. U. S. Atty., of Boston, Mass., for the United States.

BREWSTER, District Judge.   The plaintiff, as taxpayer, filed an income tax return for the year 1921, in which he showed that he had received $20,000 as dividends on stock of the Dunbar Pattern Company, a Massachusetts corporation. On July 21, 1923, he filed an amended return, which did not include these so-called dividends. At the same time he filed a claim for abatement of $3,106.18, which was rejected. Thereafter he paid this amount under protest, and, his claim for refund having been rejected, he brings these proceedings to recover that sum. It represents the surtax computed on $20,000 of dividends in a domestic corporation. Whether he received $20,000 in taxable dividends on his shares in the Dunbar Pattern Company during the year 1921 is the only question that needs to be decided.

The case was submitted upon an agreed statement of facts, and for the purposes of the record I find the facts to be as stipulated. Briefly, the controlling facts are:

The Dunbar Pattern Company was organized in 1916, with a capital stock of $40,000, divided into 4,000 shares, of the par value of $10 each. The plaintiff in that year acquired 1,200 shares. In 1920, prior to March 12, the corporation undertook to increase its capital stock to $150,000, by authorizing the issue of $110,000 of common stock. At a meeting of the stockholders the agreement of association was amended to

provide for the increase, and respecting the disposition of such increase it was voted:

"*    *    * That the increase of $110,000 be all common stock and that the same be issued at par upon payment therefor as follows:

"$16,000 of same stock to be issued, from time to time, for promissory notes, secured by amply sufficient collateral, to be approved by the board of directors, and said promissory notes to be paid, from time to time, from the net earnings of the corporation at the discretion of the board of directors. No stock to be issued except upon vote of the board of directors.

"That the proper documents be executed by the proper officers of the corporation to carry this vote into effect, and that proper legal authority be secured authorizing said increase of capital."

Articles of amendment, approved by the commissioner of corporations, were filed with the secretary of state. But the vote of stockholders was not certified in the articles of amendment, so far as it related to disposition of new stock. The recitals in the articles respecting this disposition were never authorized at any meeting of stockholders. Later the directors voted to issue 8,800 shares of the new stock to its stockholders. Of these 2,800 were to be issued to the plaintiff, to be paid for as follows: $3,000 in cash, and $25,000 by his promissory note, secured by depositing as collateral with the treasurer "the said stock until paid for." The stock was issued accordingly in 1920. The plaintiff received a new certificate for 4,000 shares, representing his original holding of 1,200 shares, plus the 2,800 shares of the increase. On June 5, 1921, the directors passed the following vote:

"That a dividend equivalent to five dollars ($5) per share be paid out of surplus and accumulated earnings for the year 1921 to date on capital stock outstanding, and that this dividend be considered as part payment for the additional issue of capital stock which is held by the corporation as collateral for the notes of the stockholders given at date of said additional issue of capital stock."

[1] The record discloses serious, perhaps fatal, defects in the steps taken by the corporation; but there can be no doubt about the illegality of the issue of the 2,500 shares to plaintiff for his note. It is settled law that, where a statute or a constitutional provision permits a corporation to issue stock only for money paid, services rendered, or property actually received, stock issued for notes of the shareholder is not legally issued. Harvey-Watts Co. v. Worcester Umbrella

Co., 193 Mass. 138, 78 N. E. 886; Pine River Bank v. Hodsdon, 46 N. H. 114; Pacific Trust Co. v. Dorsey, 72 Cal. 55, 12 P. 49; Mason v. First National Bank (Tex. Civ. App.) 156 S. W. 366; McCarthy v. Texas Loan & G. Co. (Tex. Civ. App.) 142 S. W. 96. Although the corporation may enforce payment of the note. Pine River Bank v. Hodsdon, supra; Pacific Trust Co. v. Dorsey, supra; German Mercantile Co. v. Wanner, 25 N. D. 479, 142 N. W. 463, 52 L. R. A. (N. S.) 453. Contra, Mason v. First National Bank, supra.

The business corporation laws obtaining in Massachusetts in 1920 allowed stock to be issued for cash, property, services, or expenses, but the act provided that no stock should at any time be issued, "unless the cash, so far as due, or the property, services, or expenses for which it was authorized to be issued, has been actually received or incurred by, or conveyed or rendered to, the corporation." St. 1903, c. 437, § 14.

[2] The 2,500 shares, being illegally issued, the vote to pay a dividend in cash for the sole purpose of paying for the shares illegally issued was likewise illegal and void. Rand v. Hubbell, 115 Mass. 461, 15 Am. Rep. 121.

[3] But the government contends that we must overlook the irregularities of the form and go to the substance of the transaction (United States v. Phellis, 257 U. S. 156, 42 S. Ct. 63, 66 L. Ed. 180), and if we do we will find a distribution of profits among stockholders, of which the plaintiff received $20,000 of taxable income. It is hinted that to the extent of $20,000 the issue was validated. If any such result can be worked out, which is extremely doubtful, the dividend would be, on all the authorities, a stock dividend, in substance, rather than a cash dividend, and would not be taxable. Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570; Towne v. Eisner, 245 U. S. 418, 38 S. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254; United States v. Davison (D. C.) 1 F.(2d) 465.

As Mr. Justice Pitney stated in United States v. Phellis, supra:

"The liability of a stockholder to pay an individual income tax must be tested by the effect of the transaction upon the individual."

The effect of the transaction was not to enrich the plaintiff. It gave him no cash or exchangeable property, which he could use or treat as income. Nothing was taken from the property of the corporation, and nothing added to the interest of the shareholder.

Towne v. Eisner, supra. The transfer of $60,000 (the total of the dividend declared) from surplus account to capital account did not reduce the assets of the corporation. The agreed facts do not warrant the inference that a credit of $20,000 was set up on the books of the corporation, which conferred any rights on the plaintiff to receive that sum then or later. Eisner v. Macomber, supra. The declaration of a dividend, to·be applied solely for the purpose of paying for additional stock, cannot be taken out in cash at the option of the shareholder, "for it could not be held that a separate dividend of profits was made, against the manifest intent and purpose of the whole transaction." Gray, C. J., in Rand v. Hubbell, supra; Coolidge v. Grant, 251 Mass. 352, 146 N. E. 719; Gray v. Hemenway, 206 Mass. 126, 92 N. E. 31, 138 Am. St. Rep. 377.

The learned counsel for the plaintiff has aptly summarized the argument in the following succinct statement:

"If the form be considered, the entire transaction is illegal and void.

"If the substance be considered, the dividend of $20,000 was a stock dividend, and was not taxable as income.

"For purposes of taxation, the petitioner has received nothing that answers the definition of income, within the meaning of the Revenue Act of 1921 [Comp. St. § 6336⅛a et seq.]."·

With this statement I fully concur. Plaintiff may recover according to the prayer of his petition.

The plaintiff has filed requests for rulings of law, the first 10 of which are consistent with the foregoing opinion and are granted. The eleventh request concerns the validity of the note, and, as I do not deem it material to the controversy, I refuse this request.